**SO ORDERED: May 27, 2011.**



_____
**James K. Coachys**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KEVIN HUGHES WRIGHT and | ) | Case No. 08-06052-JKC-7 |
| PEGGY SUE WRIGHT, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| RICHARD P. BATESKY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 08-50429 |
| | ) | |
| KEVIN HUGHES WRIGHT and | ) | |
| PEGGY SUE WRIGHT, | ) | |
| | ) | |
| Defendants. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEFENDANT
KEVIN HUGHES WRIGHT'S MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendant Kevin Hughes Wright's ("Kevin") Motion for Summary Judgment as to Plaintiff Richard P. Batesky, Jr.'s ("Batesky") Amended Complaint against him. Having reviewed the Motion and the parties' respective positions, the Court issues the

following Findings of Fact and Conclusions of Law.

## Findings of Fact

1. On June 22, 2006, Defendant Peggy Wright ("Peggy"), in her capacity as Trustee for the 228 Dorman Street Trust, signed two Installment Promissory Notes, each in the original principal amount of $195,000.00 and each in favor of Batesky (the "Loans").

2. The Loans were each secured by a Mortgage in favor of Batesky on the real property commonly referred to as 228 Dorman Street, Indianapolis, Indiana 46202 and 230 Dorman Street, Indianapolis, Indiana 46202 (the "Properties").

3. Per his Amended Complaint, Batesky has alleged that Peggy misrepresented to him that the funds from the Loans were to be used exclusively for the renovation and acquisition of the Properties and that the funds were, in fact, used to develop other real estate owned by Peggy or entities which she controlled, namely Wright Development, LLC ("Wright Development") and New Again Properties.

4. Kevin was not present for and did not participate in any negotiations or discussions between Peggy and Batesky with respect to the Loans.

5. Prior to Batesky making the Loans, Kevin had never meet Batesky.

6. Kevin does not now have, nor has he ever had, an interest in Wright Development, LLC, New Again Properties or the 228 Dorman Street Trust.

7. In April of 2007, Kevin loaned $35,000.00 to Wright Development. Such funds were obtained through a loan from his 401(k) account.

8. In April of 2007, Wright Development contributed $5,000.00 to Kevin's Individual Retirement Account as a loan repayment. The balance of Kevin's loan to Wright Development has

never been repaid.

9.  Kevin and Peggy Wright's residence at 242 N. Oriental Street in Indianapolis, Indiana, was originally purchased by Peggy or one of her businesses with a loan from an investor. When Kevin and Peggy moved into the home as their private residence, they refinanced the loan and repaid the investor.

10. Peggy used a credit card for business purposes that was originally opened by Kevin for his personal use. Kevin indicated in his deposition, that when Peggy began to use it for her business, he stopped using it.

## Conclusions of Law

1.  The Court first notes that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

2.  Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). With a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322-23. If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question, then the court

must enter summary judgment against it. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986)).

3.  Kevin argues on summary judgment that Batesky's claims against him–for "false pretenses" under § 523(a)(2)(A) and "embezzlement" under § 523(a)(4) are unsupported by the undisputed facts. More particularly, Kevin insists that he was not a party to the Loans and did not otherwise participate in his wife's business dealings in general and, in particular, with Batesky. The Court agrees.

4.  The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Martin,* 698 F.2d 883, 887 (7th Cir.1983). The burden of proof required to establish an exception to the discharge is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–660, 112 L.Ed.2d 755 (1991). To further the policy of providing a debtor a fresh start in bankruptcy, exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor. *Mayer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir.1994).

5.  To succeed on a false pretense claim, a creditor must show that the debtor obtained the money through representations which the debtor either knew to be false or made with reckless disregard for the truth as to constitute willful misrepresentation. *Carini v Matera*, 592 F.2d 378, 380 (7th Cir.1979). The creditor must prove the debtor possessed scienter, i.e. intent to deceive. *Gabellini v. Rega*, 724 F.2d 579, 581 (7th Cir. 1984). Finally the creditor must show that he actually relied on the false representation, and that the reliance is reasonable. *Id.*

6.  Embezzlement is "the fraudulent appropriation of property by a person to whom such property was entrusted or into whose hands it has lawfully come." *In re Weber,* 892 F.2d 534, 538

4

(7th Cir.1989) (quoting from *Moore v. United States,* 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895)). To prove embezzlement, the creditor must show by a preponderance of the evidence (1) that the debtor appropriated the subject funds for his own benefit and (2) that he did so with fraudulent intent or deceit. *In re Sarama,* 192 B.R. 922, 927, 931 (N.D.Ill.1996); *In re Conder,* 196 B.R. 104, 110 (W.D.Wis.1995).

      7.      In defending Kevin's summary judgment motion, Batesky concedes that Kevin was not directly involved in the Loan transactions and that he did not make any representation, false or otherwise, directly to him regarding the Loans. Rather, he argues that Kevin was "complicit"–for purposes of both § 523(a)(2)(A) and § 523(a)(4)–in Peggy's allegedly fraudulent acts and omissions.

      8.      In the marital context, courts are consistently reluctant to impute intent from one spouse to the other so as to prevent discharge of the innocent spouse's debt. One reason courts are hesitant to impute intent is that the marital relationship, by itself, does not always give rise to a legal partnership or agency. *See O'Donnel v. Floyd (In re Floyd),* 177 B.R. 985, 987-88 (Bankr.M.D.Fla.1995) (finding that a husband's fraud would not be imputed to his wife in the absence of specific proof of an agency relationship); *In re Ledford,* 127 B.R. at 184 (noting that the authorities cited by debtor in opposition to imputing fraud involved spouses, and thus were not decided with regard to agency principles); *In re Tara of N. Hills,* 116 B.R. 455, 462 (Bankr.E.D.N.C.1989), *aff'd,* 904 F.2d 701 (4th Cir.1990) (holding that a wife is not the agent of her husband strictly by force of the marital relationship); *First Sec. Bank v. Steinman (In re Steinman),* 61 B.R. 368, 374 (Bankr.W.D.Mo.1986) (holding that the evidence was insufficient to show that wife appointed husband as her agent where, although wife knew husband would be making representations to the bank, she did not assent to the specific misrepresentations or give her husband

5

general authority to act for her in signing the financial statement).

9. Other courts refuse to impute a spouse's intent, even when the facts suggest that an agency relationship exists. Usually, these courts find that intent cannot be imputed because the innocent spouse had little or no involvement in making the false statements. *See Landmark Leasing, Inc. v. Martz (In re Martz),* 88 B.R. 663, 676 (Bankr.E.D.Pa.1988) (refusing to impute husband's intent to deceive to wife under § 523(a)(2)(B) where wife had delegated all of her financial dealings to her husband); *Leone v. Shane (In re Shane),* 80 B.R. 240, 243 (Bankr.S.D.Fla.1987) (holding that fraud committed by husband could not be imputed to wife so as to deny her discharge of debt in the absence of actual or constructive knowledge of the fraud); *Chios v. Klein (In re Klein),* 58 B.R. 397, 398 (Bankr.E.D.Pa.1986) (holding a wife's debt dischargeable despite the fact that she signed false loan documents created by her husband because the evidence was insufficient to show that she had knowledge of her husband's fraudulent scheme).

10. In addition, most courts make a distinction between spouses who are involved in a business or partnership relationship and spouses who are not operating a business, and generally hold that intent will not be imputed from one spouse to the other in the absence of a business relationship. *See Allison v. Crescentia (In re Allison),* 960 F.2d 481, 485 (5th Cir.1992) (holding that the agency rule under which the fraud of one partner may be imputed to co-partners did not apply to spouses who were not jointly operating a business); *First USA, Inc. v. Savage (In re Savage),* 176 B.R. 614, 616 (Bankr.M.D.Fla.1994) (noting that in each case where courts have imputed liability from one spouse to the other under § 523(a)(2), both spouses had a business or partnership relationship independent of the marriage); *S.P. Inv. Ltd. Partnership v. O'Conner (In re O'Connor),* 145 B.R. 883, 892 (Bankr.W.D.Mich.1992) (refusing to impute spousal intent where husband and

6

wife were not business partners). However, when spouses have a business relationship, courts will usually apply some variety of agency law to impute intent under § 523(a)(2). *See Luce v. First Equip. Leasing Corp. (In re Luce),* 960 F.2d 1277, 1284 n.10 (5th Cir.1992) (per curiam) (holding that the existence of a marital relationship is irrelevant where a husband's fraud was imputable to his wife under § 523(a)(2) by virtue of their business partnership); *Love v. Smith (In re Smith),* 98 B.R. 423, 426 (Bankr.C.D.Ill.1989) (holding that a husband's fraudulent used-car sale was imputable to wife preventing discharge of debt because dealership license was in wife's name and wife's signature was required on business checks); *W.E. Davis Co. v. Medow (In re Medow),* 26 B.R. 305, 307 (Bankr.S.D.Fla.1982) (finding that although wife may have lacked actual knowledge that her husband submitted a false financial statement on behalf of corporation, she had an intent to deceive under § 523(a)(2)(B) because of her role as corporate secretary).

  11. Here, the evidence suggests that Kevin was only tangentially and minimally involved in Peggy's business dealings, and there is no evidence that he was specifically involved in her dealings with Batesky. More specifically, the evidence shows that Kevin loaned Wright Development money and that the majority of that loan was never repaid; that Peggy used a personal credit card that was originally used by Kevin; that Kevin allowed Peggy to utilize his "credit" for some business dealings, although not with respect to the Property; that their personal residence was originally purchased with a loan from an investor but that they refinanced that loan and repaid the investor at the time they moved into it; and that Kevin received a tax benefit from her business losses. There is no evidence that Kevin knew of Peggy's allegedly false representations to Batesky or any other investor, that he had any reason to know of her false representations or that he condoned any fraudulent act or omission by Peggy. Significantly, there is also no evidence that any of the

funds Peggy obtained from investors, or from Batesky in particular, was ever transferred to Kevin or used by him personally or for their household.

12. The undisputed evidence is insufficient, as a matter of law, to warrant the imputation of Peggy's alleged fraudulent behavior to Kevin. Accordingly, the Court must conclude that there is no genuine issue of material fact and that Kevin is entitled to judgment in his favor as a matter of law.

13. The Court will issue a Judgment consistent with these Findings of Fact and Conclusions of Law contemporaneously herewith.

###

Distribution:
Richard P. Batesky, Jr.
Gary L. Hostestler